# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42467

UNION BANK, N.A., a national banking association, )
)
Plaintiff-Respondent, )
)
v. )
)
NORTH IDAHO RESORTS, LLC, an Idaho limited liability company )
)
Defendant-Appellant, )
)
and )
)
PEND OREILLE BONNER DEVELOPMENT, LLC, a Nevada limited liability company, JV, L.L.C. an Idaho limited liability company, DAN JACOBSON, an individual, SAGE HOLDINGS LLC, an Idaho limited liability company, TIMBERLINE INVESTMENTS, LLC, an Idaho limited liability company, STEVEN G. LAZAR, an individual, AMY KORENGUT, an individual, HLT REAL ESTATE LLC, PANHANDLE STATE BANK, an Idaho corporation, R.E. LOANS, LLC, a California limited liability company, WELLS FARGO CAPITAL FINANCE, LLC, a Delaware limited liability company, PEND OREILLE BONNER DEVELOPMENT HOLDINGS, INC., a Nevada corporation, PENSCO TRUST CO. custodian f/b/a Barney Ng, a California corporation, B-K LIGHTING, INC., a California corporation, FREDERICK J. GRANT, an individual, CHRISTINE GRANT, an individual, RUSS CAPITAL GROUP, LLC, an Arizona limited liability company, JOSEPH DUSSICH, an individual, MOUNTAIN WEST BANK, an Idaho corporation, STATE OF IDAHO, DEPARTMENT OF REVENUE AND TAXATION, MONTAHENO )
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Coeur d'Alene, August 2016 Term

2017 Opinion No. 8

Filed: January 27, 2017

Stephen Kenyon, Clerk

**INVESTMENTS, LLC, a Nevada limited** )
**liability company, TOYON INVESTMENTS,** )
**LLC, a Nevada limited liability company,** )
**CHARLES W. REEVES and ANNE B.** )
**REEVES, husband and wife, ACI** )
**NORTHWEST, INC., an Idaho corporation,** )
**and DOES 1 through 20, inclusive,** )
                                        )
    **Defendants.** )
_____ )

       Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County.  Hon. Michael J. Griffin, District Judge.

       The judgment of the district court is <u>affirmed</u>.

       James, Vernon & Weeks, Coeur d'Alene, for appellant.  Susan Weeks argued.

       Stoel Rives LLP, Boise, for respondent.  Christopher Pooser argued.

_____

HORTON, Justice.

       North Idaho Resorts (NIR) appeals from the district court's decision holding that Union Bank N.A. (Union Bank) possessed a superior lien against property known as "Trestle Creek." The district court held that NIR did not possess a vendor's lien because NIR was not the owner of record and that any lien NIR might have possessed had no value. The district court further held that if NIR possessed a valid lien, NIR released any such lien as part of a recorded agreement and that Union Bank was a good faith encumbrancer with no actual or constructive knowledge of the lien.

       On appeal, NIR argues that the district court misconstrued Idaho Code section 45-801. NIR contends that the statute does not require the seller to be the owner of record. NIR asserts that the remaining conditional purchase price constituted an unpaid and unsecured value. NIR argues that Union Bank knew NIR was still owed money under the contract and that Union Bank does not qualify as a good faith encumbrancer. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

       This case originates from a real estate transaction between NIR and Pend Oreille Bonner Development (POBD). NIR was composed of several limited partners including Pend Oreille Limited. NIR presented undisputed evidence that Pend Oreille Limited transferred equitable

ownership of a piece of property, referred to as "Trestle Creek," to NIR as consideration for being granted membership in NIR. Another party, JV, LLC (JV), possessed a first priority lien, right of first refusal, and right to share in profits from future sales on another parcel owned by NIR referred to as "Moose Mountain."

On March 9, 2006, NIR entered into a purchase and sale agreement with POBD to sell several properties around Lake Pend Oreille, including the Trestle Creek property and Moose Mountain, in addition to a golf course that POBD planned to renovate and develop. The agreement identified NIR as the seller. JV relinquished all rights relating to Moose Mountain as a part of the agreement in exchange for a first priority lien on Trestle Creek. The purchase price included a down payment of $4.75 million, a promissory note of $511,000 payable to NIR, and POBD's assumption of two loans with JV and R.E. Loans. As part of the agreement, Pend Oreille Limited transferred ownership of record of Trestle Creek to POBD.

On March 15, 2007, NIR recorded a Partial Termination Agreement, releasing lots that had been purchased prior to the main purchase and sales agreement by POBD's predecessor, Pend Oreille Bonner Investments, LLC. The termination agreement contained two "Exhibit 'A'" attachments (hereinafter Exhibit A[1] and Exhibit A[2]), used to reference the properties covered by the agreement. Exhibit A[2] included Trestle Creek in the description, while Exhibit A[1] did not. The Partial Termination Agreement was re-recorded on March 11, 2009, to correct the legal description and remove Exhibit A[2]. At the same time as the original Partial Termination Agreement, POBD and NIR executed a subordination agreement, whereby NIR subordinated its vendor's lien to R.E. Loans, so that POBD could increase the loan amount from R.E. Loans. That subordination agreement contained an identical Exhibit A[2] to that filed with the original Partial Termination Agreement. The exhibit filed with the subordination agreement included Trestle Creek.

POBD sought a loan from Union Bank[1] in 2008. The loan was granted on March 7, 2008, and the mortgage on Trestle Creek securing the loan was recorded March 25, 2008. Subsequently, JV and R.E. Loans recorded subordination agreements to Union Bank's mortgage, which were filed August 6, 2008. POBD repaid the loan to R.E. Loans and completed all of the

---

[1] Union Bank was not the name of the original lender. Rather than describing the sequence of corporate name changes and a merger, we will simply refer to Union Bank's predecessors in interest as "Union Bank" because the name changes have no effect upon our decision.

payment terms with NIR except for those conditioned on bulk sales or reaching $80 million in sales, as those conditions had not yet been fulfilled.

POBD defaulted on the Union Bank loan. On May 12, 2011, Union Bank filed a complaint to foreclose against the Trestle Creek property. On June 14, 2012, NIR filed a counterclaim against Union Bank and a cross-claim against JV claiming a first priority lien. Other than NIR and JV, all defendants named by Union Bank in the foreclosure complaint either defaulted or stipulated that Union Bank's mortgage was superior to any lien they may have had on the Trestle Creek property. In April 2013, Union Bank obtained a default judgment and decree of foreclosure against POBD.

On July 1, 2013, Union Bank moved for summary judgment against NIR and JV, arguing that the facts supported a finding that both parties had subordinated their individual liens to Union Bank's mortgage. On August 28, 2013, the district court granted the motion as it related to JV, but denied it as to NIR, finding that there was a genuine issue of fact as to what property was covered under the Partial Termination Agreement. The district court granted summary judgment to amend the metes and bounds description on the same date. Following a court trial, on June 2, 2014, the district court ruled that any vendor's lien NIR might have possessed was inferior to Union Bank's mortgage. On September 19, 2014, the district court entered judgment against NIR. NIR appealed.

## II. STANDARD OF REVIEW

"This Court exercises free review over questions of law," which includes interpretation of statutes. *Insight LLC v. Gunter*, 154 Idaho 779, 783, 302 P.3d 1052, 1056 (2013). "The primary function of the Supreme Court when interpreting a statute is to give effect to the legislative intent, which should be derived, where applicable, from the clearly expressed intent of the legislature." *Id*. The Court will only set aside findings of fact if they are clearly erroneous. *Estate of Skvorak v. Sec. Union Title Ins. Co.*, 140 Idaho 16, 19, 89 P.3d 856, 859 (2004). "Appellate review of the decision of the trial court is limited to ascertaining whether substantial, competent evidence supports the findings of fact and whether the findings of fact support the conclusions of law." *Id*.

## III. ANALYSIS

The district court concluded that NIR did not possess a vendor's lien because: (1) NIR was not the owner of record at the time of the sale; (2) any lien NIR might have possessed had no

value; and, (3) NIR released any such lien as part of a recorded Partial Termination Agreement and Union Bank was a good faith encumbrancer, with no actual or constructive knowledge of the lien. Because we affirm the district court's decision on the Partial Termination Agreement issue, we do not reach the other issues in our decision.

## A. Union Bank was entitled to rely on the recorded Partial Termination Agreement.

The district court held that Union Bank qualified as a good faith encumbrancer and that Union Bank's status placed its mortgage higher than NIR's vendor's lien based on Idaho Code section 45-803. The district court reasoned that Union Bank was entitled to rely on the record, regarding existing liens, at the time the mortgage was created and that Union Bank did not possess actual or constructive knowledge of NIR's vendor's lien, based on Union Bank's reliance on the originally filed Partial Termination Agreement. The district court explained that Union Bank, or any subsequent encumbrancer, was entitled to rely on the record at the time of the mortgage and the inclusion of Trestle Creek in the document had effectively terminated NIR's rights at the time of the mortgage.

The district court found that there was no notice from the originally filed Partial Termination Agreement that a mistake had been made regarding the property covered by the agreement and concluded that, therefore, Union Bank was a good faith encumbrancer, with no actual or constructive knowledge of any lien NIR might have possessed.

NIR argues that Union Bank was aware POBD had not yet completely fulfilled the contract terms, and that there was still an unfulfilled condition on future payments. NIR bases these arguments on Union Bank's purported knowledge that POBD had not yet fully paid NIR, as disclosed in the credit authorization memorandum of Union Bank's predecessor. NIR asserts that the information in these documents, which were created after the original Partial Termination Agreement was filed, shows Union Bank's actual knowledge of NIR's lien after the filing of the Partial Termination Agreement, which would disqualify Union Bank as a good faith encumbrancer. NIR also contends that Union Bank should have been aware of the mistake in the recording of the Partial Termination Agreement, since the agreement contained two contradictory "Exhibit 'A'" attachments. NIR asserts that those two separate attachments should have led Union Bank to realize that there was a mistake in the filing of the Partial Termination Agreement, which would provide Union Bank with notice that NIR might not have terminated all rights to Trestle Creek and might still possess a vendor's lien. NIR therefore argues the

district court erred by determining that Union Bank was a good faith encumbrancer under Idaho Code section 45-803.

Union Bank responds that it was entitled to rely on the record at the time of the mortgage, citing *Kalange v. Rencher*, 136 Idaho 192, 196, 30 P.3d 970, 974 (2001). The district court correctly held that Union Bank was a good faith encumbrancer for purposes of Idaho Code section 45-803. Under Idaho Code section 45-803, vendor's liens are subject only to encumbrancers in good faith. I.C. § 45-803. Good faith means lack of actual or constructive knowledge of any existing lien. *Benz v. D.L. Evans Bank*, 152 Idaho 215, 225-26, 268 P.3d 1167, 1177-78 (2012). Constructive knowledge is "knowledge of such facts and circumstances as would have led to the discovery of [a] purchase and conveyance by a reasonably prudent man. . ." *Id.* at 226–27, 268 P.3d at 1178–79. Constructive knowledge is derived from the record at the time of the encumbrance. *Id*. The presence of either constructive or actual knowledge of an existing lien is sufficient to subordinate the second encumbrance to the existing lien. *Id*.

The district court made findings that Union Bank lacked either actual or constructive knowledge of NIR's vendor's lien. The district court based these findings on the state of the record at the time Union Bank recorded its mortgage. The record at that time consisted of the original Partial Termination Agreement, which included Trestle Creek in one of the two Exhibit "A" attachments. The district court found as a matter of fact that the presence of two Exhibit "A" attachments was not sufficient notice of a mistake in the record to give Union Bank notice of any lien NIR might possess. This finding is supported by substantial, competent evidence in the record. Thus, the district court correctly held that Union Bank was a good faith encumbrancer.

The district court held that the originally filed Partial Termination Agreement was a binding release of NIR's rights against Trestle Creek. The district court reasoned that the agreement terminated NIR's rights in Trestle Creek up until the recording of the corrected agreement. The district court further reasoned Union Bank was entitled to rely on the record at the time of the mortgage. The district court therefore held that Union Bank's rights superseded NIR's rights, since NIR's rights were released at the time of Union Bank's mortgage.

NIR argues that the doctrine of relation back allows a corrected deed to be effective as of the date of the original deed. NIR cites *Sartain v. Fid. Fin. Servs., Inc.*, 116 Idaho 269, 272, 775 P.2d 161, 164 (Ct. App. 1989), to assert that reformation of an erroneous deed makes all rights within the corrected deed effective from the date of the original deed. NIR contends that the

original recording date, which was prior to Union Bank's mortgage, is the binding date for the re-recorded Partial Termination Agreement. NIR argues that the correction of the Partial Termination Agreement, which included only Exhibit A[1] and excluded Trestle Creek, negates any prior release made through the original agreement. NIR concludes the district court erred by finding that the original Partial Termination Agreement completely terminated NIR's rights to Trestle Creek. We disagree.

The district court correctly held that the Partial Termination Agreement terminated any rights NIR held on Trestle Creek at the time of Union Bank's mortgage. The relation back doctrine allows the corrected agreement to apply as of the date of the original agreement, provided no third party rights have intervened. *Sartain*, 116 Idaho at 272–73, 775 P.2d at 164–65. Idaho recognizes the relation back doctrine as it pertains to deeds, allowing corrections of mistakes regarding conveyances of real property. *Id*. The purpose of the doctrine is to allow recognition of the parties' original intent. *Id.* at 272, 775 P.2d at 164. However, if a third party intervenes before the recording of the correction deed, the deed cannot be corrected if the correction adversely affects the third party. *Id*. If the third party had actual or constructive knowledge of the mistake in the original, then that party is not a good faith encumbrancer, and the correction is allowed. *Id*. If the third party acted in good faith reliance on the record, with no actual or constructive knowledge of a mistake, that party's rights supersede the correction deed, and the correction does not apply to the third party. *Id*.

NIR's correction of the Partial Termination Agreement did not relate back because Union Bank's mortgage was recorded prior to the correction. The district court found as a matter of fact that Union Bank had no actual or constructive notice from the record of the mistaken inclusion of Trestle Creek in the original agreement. As discussed above, that finding is supported by substantial and competent evidence. Union Bank relied on the record in good faith and intervened with the mortgage on Trestle Creek. Allowing relation back of the corrected agreement would materially affect Union Bank's rights, since that would place NIR's vendor's lien at a higher priority than Union Bank's mortgage.

## IV. CONCLUSION

We affirm the district court's judgment in favor of Union Bank. We award costs on appeal to Union Bank.

Chief Justice BURDICK, Justices EISMANN, W. JONES and Justice Pro Tem J. JONES, **CONCUR**.